IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIGHTSTAR INTERNATIONAL CORP., | ) |
| Plaintiff, | ) |
| v. | ) 10 C 230 |
| MINUTEMAN INTERNATIONAL and BNSF RAILWAY COMPANY, | ) Judge Virginia M. Kendall |
| Defendants. | ) |

_____

| | |
|---|---|
| BNSF RAILWAY COMPANY, | ) |
| Third-Party Plaintiff, | ) |
| v. | ) |
| AZTEC PRODUCTS, INC., | ) |
| Third-Party Defendant | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Brightstar International Corp. brought suit against Defendants Minuteman International and BNSF Railway Company, seeking damages for the destruction of its goods sustained during interstate shipping. BNSF, as a Third-Party Plaintiff, filed a complaint against Aztec Products, Inc., for indemnity in the event that BNSF is found to be liable to Brightstar. For the reasons set forth below, BNSF's third-party complaint against Aztec is dismissed.

**I. Background**

The interstate shipment of goods by rail or by truck can be a complicated, and sometimes

1

dangerous, matter. This case arises out of the events that can go wrong when cellular telephones are shipped alongside highly combustible floor scrapers. The Plaintiff, Brightstar International Corp. ("Brightstar"), was the owner of 215 cartons of cell phones. (Complaint at ¶ 6). Brightstar entered into an agreement with BNSF Railway Company ("BNSF"), Defendant and Third-Party Plaintiff, for the shipment of these cell phones by rail from Illinois to California. (Complaints at ¶ 6). The intended destination of Brightstar's shipment was Wal-Mart Stores, Inc., but due to a series of intervening events the cell phones were destroyed en route. (Complaint at ¶¶ 7 and 13). What happened to Brightstar's cell phones, and who is responsible for bearing the losses, are the issues at the heart of this litigation.

## II. The Facts

BNSF consolidated the shipment of Brightstar's cell phones with battery-powered floor scrapers equipped with butane tanks shipped by the other Defendant in this case, Minuteman International, Inc. ("Minuteman"). (Complaint at ¶ 8). On approximately January 16, 2009, the consolidated shipment arrived in Fontana, California, where it was discovered to be on fire. (Complaint at ¶ 9). Brightstar alleges that the fire was the direct result of the combustion and/or explosion of Minuteman's floor scrapers. (Complaint at ¶¶ 11-12). Brightstar brought suit in this Court against BNSF and Minuteman pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a) respectively. As to BNSF, Brightstar claimed losses arising under the Carmack Amendment to the Interstate Commerce Act of 1887 (*see* 49 U.S.C. § 11706), as well as one count for breach of bailment. (Complaint at ¶¶ 18-21; Complaint at ¶¶ 22-25, respectively). As to Minuteman, Brightstar claimed that Minuteman was negligent in shipping the floor scrapers. (Complaint at ¶¶ 14-17). BNSF turned around and sued Aztec Products, Inc. ("Aztec"), the Third-Party Defendant

here, alleging that Aztec manufactured the floor burnishers which are the subject of Brightstar's suit. (Doc. 68, BNSF Railway Company's Amended Third-Party Complaint Against Aztec Products, Inc. at ¶ 3 ("Third-Party Complaint")). BNSF asserts that, should it be determined to be liable to Brightstar, it is entitled to indemnity from Aztec "in any amount BNSF is required to pay Brightstar." (Third-Party Complaint at ¶ 7). BNSF claims that Aztec warranted, either expressly or by implication, that its floor burnishers were "properly prepared for safe shipment in interstate commerce," and that this warranty was breached. (Third-Party Complaint at ¶¶ 5-6). Aztec asked this Court to dismiss BNSF's third-party claim again it under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Aztec's motion is granted and the claim against it is dismissed.

## III. The Standard of Review

When considering a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the non-moving party. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir.1995). To properly state a valid claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Detailed factual allegations" are not required, but the third-party plaintiff must allege facts that, when "accepted as true ... 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To determine whether a complaint meets this standard the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950. If the factual allegations are well-pleaded, the Court assumes their veracity and then turns to determine whether they plausibly give rise to an entitlement to relief. *Id.* A claim has facial plausibility when its factual content allows the

Court to draw a reasonable inference that the third-party defendant is liable for the misconduct alleged. *See Id.* at 1949.

## IV. Discussion

*A. The Carmack Amendment*

The Carmack Amendment creates a nationally uniform system of liability for common carriers shipping goods within the stream of interstate commerce. *See* The Carmack Amendment to the Interstate Commerce Act of 1887, 49 U.S.C. § 11706 (known simply as the Carmack Amendment). Specifically, the statutory scheme prescribes the rule of liability for interstate motor carriers to shippers of goods that are lost or damaged during shipment. The statute provides in relevant part:

> A rail carrier providing transportation or service subject to the jurisdiction of the Board under this part shall issue a receipt or bill of lading for property it receives for transportation under this part. That rail carrier...[is] liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this subsection is for the actual loss or injury to the property caused by (1) the receiving rail carrier; (2) the delivering rail carrier; or (3) another rail carrier over whose line or route the property is transported in the United States...Failure to issue a receipt or bill of lading does not affect the liability of a rail carrier.

49 U.S.C. § 11706(a) (1995). The Amendment was implemented in 1906 to address the disuniformity which existed in the law up to that time. Until the Amendment, the liability of common carriers to shippers was a matter of state common law, federal common law (at least until *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)) or state positive law–producing wildly different outcomes in different jurisdictions. The Amendment was made to simplify and unify the law of interstate shipping so that shippers and common carriers alike had predictable default rules around which they could (to some extent) bargain if they so chose. *See* 49 U.S.C. § 11706(c). The

Amendment is essentially "a codification of the common law liability of carriers for damage to shippers' goods, [and] provides a remedy against [common carriers] responsible for damage to a plaintiff's goods unless the [common carrier] can prove that he was free from fault." *Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629, 633 (7th Cir. Ill. 2001) (Posner, J.).

To unify the law in this area, the Supreme Court has observed that Congress rigorously drafted the Carmack Amendment such that "almost every detail of the subject of liability of a carrier is covered so completely [ ] that there can be no doubt that Congress intended to take possession of the subject and supercede all state regulation with reference to it." *Adams Express Co. v. Croninger*, 226 U.S. 491, 505 (1913). The Seventh Circuit has held that "the Carmack Amendment preempts all state law claims based upon the contract of carriage, in which the harm arises out of the loss of or damage to goods." *Gordon v. United Van Lines*, 130 F.3d 282, 284 (7th Cir. Ill. 1997) (citing *North American Van Lines, Inc. v. Pinkerton Security Systems, Inc.*, 89 F.3d 452 (7th Cir. 1996)). The preemptive scope of the Amendment, though extraordinarily broad, is not absolute. According to the Seventh Circuit "the Carmack Amendment does not preempt those state law claims that allege liability on a ground that is separate and distinct from the loss of, or the damage to, the goods that were shipped in interstate commerce." *Gordon*, 130 F.3d at 284.

B. *Breach of Implied Warranty and Carmack Preemption*

BNSF has tried to avoid the straightforward application of the preemptive force of the Carmack Amendment by characterizing its claim against Aztec as one for indemnity due to the negligent breach of warranty. That is, BNSF argues that Aztec is liable to it under a tort theory for the breach of a duty implied either by the Carmack Amendment or the contract (i.e, the bill of landing) between them. But BNSF's attempt at crafty pleading is to no avail. Although a shipper

5

may be liable to a carrier in tort due to the breach of a duty implied under the Carmack Amendment, such liability must arise from conduct that is *separate and distinct* from the loss of the goods or be due to incidental harms apart from the harm to the goods shipped. *See Gordon,* 130 F.3d at 284. This includes all state and federal remedies resulting from the negligent performance of interstate shipping as well as claims based on the contract of carriage in which the harm arises out of the loss or damage to the goods. *See Id.* Claims for negligence, breach of contract, conversion, intentional and negligent misrepresentation, and negligent infliction of emotional distress are all preempted by the Carmack Amendment. *See Id.* at 289 (citing *Hughes v. United Van Lines Inc.,* 829 F.2d 1407, 1415 (1987)).

A cause of action not within the ambit of the preemptive scope of the Carmack Amendment is the rare exception, and in this Circuit although a shipper may be able to maintain a claim against a carrier for intentional infliction of emotional distress or for assault by the carrier's employees, few other causes of action are permitted. *See Gordon,* 130 F.3d at 289 (holding that a claim against a carrier for intentional infliction of emotional distress is not preempted by the Amendment because the harm alleged was independent from the loss or damage to the goods shipped, and citing *Rini v. United Van Lines, Inc.,* 104 F.3d 502 at 506 (1st Cir. 1997) ("...liability arising from separate harms-apart from the loss or damage of goods-is not preempted. For example, if an employee of the carrier assaulted and injured the shipper, state law remedies would not be preempted.")). Thus for liability to flow from Aztec to BNSF, Aztec must be liable to BNSF on separate and distinct grounds from the destruction of Brightstar's cell phones and for losses other than the loss of the phones. Because BNSF asserts that if it "is determined to be liable as respects the claim of Brightstar, BNSF is entitled to indemnity against Aztec in any amount BNSF is required to pay Brightstar," it is clear

that BNSF's claim is merely one for the loss of the goods.

Breach of an implied warranty–assuming, without deciding, that such an implied warranty even exists under these facts–is not a separate and distinct cause of action such that preemption is not triggered by the Carmack Amendment. Like a claim for negligence or misrepresentation (both of which, as stated above, are preempted), breach of an implied warranty is a run of the mill common law tort action, whether the relevant common law is state or federal.[1] Distilling the underlying theory of those cases in which courts have found a valid cause of action not preempted, like *Gordon* and *Rini*, it is evident that their rationale does not apply here. There, the courts held that the causes of action against common carriers could go forward because the acts of the tortfeasors were not in any way a reasonable part of, or a foreseeable consequence of, interstate shipping. For those acts that are so separate and apart from what is reasonably involved in shipping goods interstate and so unforeseeable that neither party would make arrangements with the other if the acts came to pass, a valid cause of action may exist. In all other circumstances, the Carmack Amendment embodies the common law principle that shippers and carriers are well-suited to make arrangements with each other and so creates default rules of liability around which the parties may make some modifications. When a carrier is transporting the goods of two or more shippers, the statute presumes that it is more efficient to have the carrier bear the liability arising out of any losses, even if those losses are due in part to the negligent acts of one of the shippers. The shippers are poorly situated to communicate and coordinate among themselves, but each is well situated with respect to the carrier. Thus, the

---

[1]This Court does not venture an opinion on the nature of an implied warranty cause of action under federal common law. Given the rule in *Erie*, the Court is skeptical that such a cause of action even exists. *Erie*, 304 U.S. 64. Whether such a federal common law cause of action exists, however, is not determinative of the outcome here. The Carmack Amendment preempts *a fortiori* whatever federal common law causes of action other courts may have found to exist.

carrier is liable to a shipper whose goods are destroyed even if the destruction is due to the negligence of another shipper. That a manufacture of goods may not have properly prepared them for interstate travel is a reasonably foreseeable situation from the point of view of a carrier. BNSF was in a good position to understand the contents of the shipment, evaluate the shipment and take care for the possibility that the goods were poorly suited for interstate shipping. Therefore, BNSF's cause of action against Aztec for breach of warranty is preempted by the Carmack Amendment.

*C. Indemnity*

There is yet another reason why BNSF's Third-Party Complaint fails. Where, as here, there is no cause of action under which one may be a joint tortfeasor, a claim for indemnity cannot lie. Indeed, at least one court in the Northern District has held that contribution claims cannot be brought under the Carmack Amendment. *See Fireman's Fund Insurance Co., v. Werner Enterprises, Inc.,* No. 03 C 3228, 2004 WL 406981 (N.D. Ill. Feb. 6, 2004). In that case, under a similar set of facts, the court held that "a defendant sued under the Carmack Amendment cannot bring an action for contribution under Illinois law." *Id.* at *6. The court explained that the Contribution Act requires potential liability sounding in tort and not in contract. The Carmack Amendment, by contrast, is contractual in nature and the liability arising under the Amendment sounds in contract. Therefore, there cannot be any tort liability between a carrier and a shipper, so by operation of law there cannot be joint tortfeasors for the purposes of the Contribution Act. The court therefore concluded that because there is no tort liability, no contribution action could be brought against a third party under the Contribution Act either. *Id.* In their brief, BNSF argues that their claim for indemnity arises not out of state law, but rather federal common law. Facing the same argument, the court held that there was no reason to treat a contribution action based on federal common law seeking joint tort liability

8

differently from one based on state positive law. *Id.* at *6-7.

Although *Fireman's Fund* dealt with a claim for contribution and not indemnity, this Court finds its rationale persuasive. Furthermore, there is no reason here to distinguish claims for contribution from those for indemnification. In tort, the distinction between contribution and indemnification matters only to the manner in which joint tortfeasors apportion their respective shares of liability. *See* Restatement (Third) of Torts § 7 (2000). Both require tortious conduct by two or more tortfeasors. The rationale of *Fireman's Fund's* holding as to contribution claims applies with equal force to BNSF's claim for indemnity. Therefore, reading BNSF's Third-Party Complaint as bringing a claim for indemnity arising out of the negligent breach of a duty implied by the Carmack Amendment, this Court finds that the claim sounds in tort. It is true that *Fireman's Fund* did not reach the issue of contribution when the claim is one for negligence on a theory of liability arising out of the breach of a duty implied by the Amendment. *See Fireman's Fund*, 2004 WL 406981 at *6. Nevertheless, the case's holding is still persuasive where, as here, the cause of action is for negligently breaching a duty argued to be implicit in the relationship between the carrier and the shipper. The claim must therefore fail, not only on preemption grounds, but also because there is no legally cognizable tortious conduct on Aztec's part for which it must indemnify BNSF. Even if the cause of action were not preempted, BNSF could not seek indemnity against Aztec because Aztec was not a party to the bill of landing (i.e., the contract) between BNSF and Brightstar, and thus cannot be jointly liable with Brightstar for the any negligent breach of extracontractual duties arising under it. And even if BNSF's cause of action is construed as one for indemnity on a purely contractual theory, the same result must follow, again because Aztec was not a party to the contract that is the subject matter of Brightstar's complaint against BNSF.

9

## V. Conclusion

BNSF has cited nothing in its brief which persuades this Court that its breach of warranty claim is not preempted by the Carmack Amendment or that it can maintain a valid indemnity action against Aztec. BNSF cites to *Byrton Dairy Products, Inc., v. Harborside Refrigerated Services, Inc.*, 991 F. Supp. 977 (N.D. Ill. Dec. 1, 1997) for the proposition that a defendant is allowed to proceed with a claim under the Carmack Amendment against a co-defendant shipper for indemnity and contribution under federal common law. There are several reasons to question the holding of that case, as well as its application to the instant matter. First, as noted by the court in *Fireman's Fund*, that case supplied little reasoning as to why a federal common law indemnity action was available. *Fireman's Fund*, 2004 WL 406981 at *7. The court further noted that *Byrton Dairy* relied on, among other cases, Second Circuit precedent indicating a trend in the law towards a rule allowing contribution among joint tortfeasors. *Id.* (citing *Mooney Ltd. v. Farrell Lines, Inc.,* 616 F.2d 619 (2d Cir. 1980). However, as explained in above, there are no joint tortfeasors in this case. *Byrton Dairy* concerned contribution actions between maritime shippers and inland carriers, thus distinguishing them from the facts of *Fireman's Fund*, where the defendants were not contracted shippers of the goods. *Id.* The same distinguishing fact appears here, as Aztec was not a contracted shipper of the floor scrapers at issue in Brightstar's litigation.

For the reasons set forth above, Aztec's motion to dismiss BNSF's Third-Party Complaint against it is granted and the claim is dismissed.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: October 4, 2011